UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ALBERT and FRANCES,

               Plaintiffs,                    ORDER

                    v.                               10-CV-6613 CJS

WATKINS GLEN INTERNATIONAL, INC.,
and SCHUYLER COUNTY SHERIFF'S
DEPARTMENT,
               Defendants

---

INTRODUCTION

This is an action, apparently brought pursuant to 42 U.S.C. § 1983, in which the Plaintiffs, proceeding *pro se*, allege that Defendants violated their due process rights under the Fifth Amendment to the United States Constitution, by evicting them from their residence without due process. Now before the Court is an application for preliminary injunctive relief. For the reasons that follow, the application is denied.

BACKGROUND

Plaintiffs Albert and Frances, who indicate that they have no last name, but who were formerly known as Albert Valent and Frances Valent,[1] contend that Defendants wrongfully evicted them from their home, which Plaintiffs identify as "2031 Baker Hill Road," in the Town of Dix, Schuyler County, New York. Plaintiffs indicate that their residence consists of a house, along with "about 350 acres" of land, on which they maintain a variety of farm animals.

On October 27, 2010, the Schuyler County Sheriff evicted Plaintiffs, based on an eviction warrant signed on September 20, 2010, by the Honorable Judith F. O'Shea, Justice of the New York State Supreme Court, Schuyler County, in the action *Watkins Glen International* ("WGI"),

---

[1] Plaintiff's papers indicate that they changed their names, and also renounced their United States citizenship.

1

*Petitioner, against Albert Valent and Frances E. Valent, a/k/a Albert and Frances*, Index No. 2010-0053. The action by WGI was a proceeding to recover possession of real property, pursuant to New York Real Property Actions and Procedure Law ("RPAPL") § 741. The eviction warrant directed the sheriff to remove all persons from "2001 Baker Hill Road," "further described as Tax Map # 84-1-41.2, Tax Map # 94.00-1-6.1, Tax Map # 84.00-1-41.2 and a portion of the property identified as Tax Map # 84.00-1-41.11 as set forth in the Decision and Order of Justice Judith F. O'Shea, dated August 13, 2010, and to put said petitioner in full possession thereof."

Attached to Plaintiffs' Complaint in this action is a copy of Justice O'Shea's Decision and Order dated August 13, 2010. In it, Justice O'Shea described the property at issue, which she referred to as "2001 Baker Hill Road," as being accurately described in WGI's Schedule A. Schedule A described the property as consisting of, in pertinent part, a white house and a blue house, along with approximately 400 acres of land.[2] (O'Shea Decision and Order at 3).[3] Justice O'Shea stated that although this property had once belonged to Plaintiffs Albert and Frances, they had lost ownership of the property in 2001, as a result of the foreclosure of a tax lien. Subsequently, WGI purchased the property. Nevertheless, Albert and Frances continued to live on the land and to conduct farming activities.

In the action pending before Justice O'Shea, Albert and Frances argued that WGI did not

---

[2] Justice O'Shea based this finding on the testimony of land surveyor William E. Beardsley ("Beardsley"), who stated that "both the white house and the blue house are contained in the description of the property in 'Schedule A,' which consists of approximately 400 acres and is titled to petitioner [WGI]." *Id*. at 3. Beardsley testified on behalf of WGI. Albert and Frances had their own surveyor, Thomas Merrill, testify at the hearing before Justice O'Shea. Merrill acknowledged that Albert and Frances do not own the property on which they are residing, because their title was extinguished in the tax lien foreclosure. *Id*. at 4.

[3] Attached to Plaintiff's Complaint is a quitclaim deed, from EOG Resources, Inc. to WGI, dated December 15, 2006, which has an attached Schedule A. Plaintiffs refer to this Schedule A, and argue that it does not refer to the property on which they were living, since it describes property having a total acreage of approximately only seventeen acres. However, there is no indication that this Schedule A is the same Schedule A referred to in Justice O'Shea's decision. In fact, it appears clear that it is not the same Schedule A, for at least two reasons. First, Justice O'Shea referred to the fact that after the initial eviction proceeding was dismissed in 2009, WGI had a corrected property description prepared by Beardsley, and it was this corrected property description which was referred to as Schedule A in Justice O'Shea's Decision and Order. And second, the Schedule A referred to by Justice O'Shea described a parcel containing several hundred acres of land.

own the property on which they resided, for several reasons. First, they stated that they had never received the property tax bills, which went unpaid and which resulted in the 2001 tax lien foreclosure. Additionally, they maintained that there were defects in the property descriptions in the deeds conveying title to WGI. And further, they argued that WGI's petition, seeking to evict them from the property, did not accurately describe the property on which they were residing. On this last point, Justice O'Shea stated: "The gist of [Albert and Frances' argument] is that 2001 Baker Hill Road is a blue house on 5 acres of land, while they live in a white house with 400 acres of land, thereby making the petition defective." (O'Shea Decision and Order at 2). Significantly, though, Albert and Frances indicated that, although the property on which they resided had been known as "2031 Baker Hill Road" prior to the tax lien foreclosure, "Schuyler County [later] removed the address from their home and placed it on a cell phone tower." *Id*. at 4. Albert and Frances further stated that following the tax foreclosure, at their request, the County referred to their address as being "Highland Drive, Lot 5, Clarkson Tract, John W. Watkins Patent, Land of Valent." Justice O'Shea rejected Albert and Frances' arguments concerning the alleged deficiencies of WGI's petition, and ruled that WGI was the owner of the subject property, including the property described in the aforementioned Schedule A. And specifically, Justice O'Shea ruled that the property, which, again, she referred to as "2001 Baker Hill Road," included the white house and several hundred acres of land, upon which Albert and Frances had been living unlawfully since the tax lien foreclosure. (O'Shea Decision and Order at 5) ("The record as a whole clearly establishes that petitioner [WGI] has title to the property, that respondents [Albert and Frances] unlawfully remain in possession of the premises, and that eviction is warranted.")

It is noteworthy that the aforementioned action before Justice O'Shea was not the first lawsuit in which WGI had sought to evict Albert and Frances. Plaintiffs' Complaint refers to another such action, which was commenced by WGI against Albert and Frances in Schuyler County Court in 2008. (Watkins Glen International, Petitioner, against Albert Valent and Frances

3

E. Valent, Index No. 08-029). As part of that proceeding, Albert and Frances raised some of the same arguments that they subsequently raised before Justice O'Shea, including the argument that WGI's petition did not accurately describe the property on which they lived. Regarding this earlier action, Justice O'Shea stated, in her Decision and Order: "Petitioner previously commenced a similar ejectment proceeding against respondents in 2008, however, in a Decision and Order issued by the Hon. Molly Reynolds Fitzgerald on July 9, 2009, the petition was dismissed due to a defective property description." (O'Shea Decision and Order at 2). Following the dismissal of the earlier action, WGI hired a surveyor to correct the defective property description, and then commenced the second eviction proceeding.

On October 28, 2010, the day following the eviction, Plaintiffs commenced this action. Along with their Complaint, Plaintiffs submitted the subject application for preliminary injunctive relief. In that regard, Plaintiffs have submitted a proposed "Temporary Restraining Order and Order to Show Cause," which would restrain Defendants, "from taking any further or other actions of any kind" with regard to Justice O'Shea's warrant, and from preventing Plaintiffs from returning to the property.

Essentially, Plaintiffs contend that the eviction denied them due process, because the eviction warrant referred to "2001 Baker Hill Road," while they purportedly resided at "2031 Baker Hill Road." *See*, Complaint ¶ 35 ("Defendants knowingly evicted Plaintiffs without a court order, violating all property and constitutional rights and interfering with Plaintiffs' choice of citizenship."). However, as discussed above, Plaintiffs' complaint indicates that the County stopped referring to the property on which they resided as 2031 Baker Hill Road following the tax lien foreclosure. Moreover, Justice O'Shea's Decision and Order clearly included, as part of "2001 Baker Hill Road," the property on which Albert and Frances resided, including the white house and several hundred acres of farm land. In any event, Plaintiffs further allege, in support of their application for injunctive relief, that the eviction may result in "cruelty and/or death to plaintiffs' hundreds of

4

animals." (Complaint at 1). Specifically, Plaintiffs state that there is a large number of animals on the property, including deer, beef cattle, dairy cows, geese, turkeys, guinea hens, chickens, and cats. Plaintiffs express concern that the animals will not be cared for. Their papers, though, indicate that WGI has made arrangements with a local farmer to care for the animals until they are removed from the property, and that Plaintiffs are providing the farmer with instructions concerning the normal care and feeding of the animals. Complaint ¶¶ 24-25. Plaintiffs further allege that they were required to leave behind their personal property, with the exception of some clothes. However, attached to Plaintiff's Complaint is a notice from WGI, informing Plaintiffs that their personal property was placed in storage, and that Plaintiffs may claim the property on or before November 30, 2010. Plaintiffs' papers further indicate that their daughter was told, by a representative of WGI, that Plaintiffs could have access to the house by making an appointment with WGI.

## DISCUSSION

Plaintiff's application is an *ex parte*[4] request for injunctive relief under Federal Rule of Civil Procedure 65. That rule states in pertinent part, "[t]he court may issue a preliminary injunction only on notice to the adverse party." Fed.R.Civ.P. 65(a)(1). A court may issue a temporary restraining order without notice to an opposing party, only if the following conditions are met:

> [S]pecific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and ... the movant's attorney certifies in writing any efforts made to give the notice and the reasons why it should not be required.[5]

Fed.R.Civ.P. 65(b)(1)(A) & (B). To obtain either a temporary restraining order or a preliminary injunction, the movant must make a showing of "(a) irreparable harm; and (b) either (1) likelihood

---

[4] Plaintiffs' application is being made without notice to the Defendants, who have not yet been served with a summons or complaint.

[5] Even assuming that Plaintiffs were otherwise entitled to preliminary injunctive relief, they have not attempted to explain why such relief should be granted without notice to Defendants.

5

of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc. .*, 596 F.2d 70, 72 (2d Cir.1979); *see also, Jackson v. Johnson*, 962 F.Supp. 391, 392 (S.D.N.Y.1997) ("In the Second Circuit, the standard for a temporary restraining order is the same as for a preliminary injunction.") (citations omitted). Preliminary injunctive relief "is an extraordinary remedy that will not be granted lightly." *Jackson v. Johnson*, 962 F.Supp. at 392 (citations omitted).

The violation of a constitutional right will establish irreparable harm. *Lynch v. City of New York*, 589 F.3d 94, 99 (2d Cir. 2009). "The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest."
*Patterson v. City of Utica*, 370 F.3d 322, 329 (2d Cir. 2004) (citations omitted).

In this case, Plaintiffs have not shown either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in their favor. Much to the contrary, the record indicates that Plaintiffs received due process prior to being evicted. The record indicates that Plaintiffs have not owned the subject property since 2001, and that they have no legal right to be on the property. Moreover, Plaintiffs received ample notice of the eviction proceeding, and had an opportunity to be heard and to present evidence at a hearing. At the hearing, Plaintiffs raised the same arguments that they make in this action. Additionally, while Plaintiffs maintain that the eviction warrant was defective because it described the property as 2001 Baker Hill Road, and not 2031 Baker Hill Road, their papers indicate that the property has not been known as 2031 Baker Hill road for a number of years, and that, in any event, Justice O'Shea used the term "2001 Baker Hill Road" to include the property from which Plaintiffs were evicted. Therefore, the eviction warrant pertained to the white house and farm land upon which Plaintiffs were residing.

For these reasons, Plaintiffs have not shown that they are entitled to preliminary injunctive relief.[6]

CONCLUSION

Plaintiff's application for preliminary injunctive relief is denied.

IT IS SO ORDERED.

Dated:   Rochester, New York
         November 2, 2010

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[6] On Friday, October 29, 2010, at approximately 4:30 pm, two individuals who identified themselves as process servers for Albert and Frances came to the courthouse and asked to speak with the Court's Law Clerk, Michael Kehoe. Mr. Kehoe informed these persons that, because Judge Siragusa had been extremely busy with criminal matters, he would likely not be able to issue a written decision on the application that day. Mr. Kehoe explained that the *ex parte* TRO application, would in all likelihood, have to be denied, if for no other reason, because it failed to explain why Plaintiffs could not have given notice of the application to WGI. See, FRCP 65(b)(1). Mr. Kehoe further explained, that in his opinion, the application did not state a due process claim, since Justice O'Shea's decision identified the land upon which Plaintiffs resided as 2001 Baker Hill Road, the address contained in the eviction warrant. Mr. Kehoe further observed that, according to Plaintiffs' own papers, their livestock was being cared for by a local farmer, who had been hired for that purpose by WGI. Mr. Kehoe emphasized that these were only his opinions, that he did not speak for the Judge on these points, and that the Judge would set forth his reasoning in the written decision. On November 1, 2010, at 7:54 am, the Court received a seven-page fax, purportedly written by Albert and Frances. The document purports to recite what occurred at the meeting the previous day, even though Albert and Frances were not at the meeting. The letter erroneously states that Mr. Kehoe indicated that the Schuyler County Sheriff had "a right to IGNORE the WARRANT and the address and parcel numbers explicitly listed on the WARRANT." (emphasis in original). The letter also incorrectly alleges that Mr. Kehoe "suggests that we have not shown any immediate or irreparable harm by stating that our dairy cows have not been milked since Tuesday October 26, 2010." As noted above, Mr. Kehoe indicated only that it did not appear that the animals were in danger, since according to Plaintiffs' own papers, their animals were being cared for by a local farmer.