# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

ALBERT and FRANCIS,

                                            Plaintiffs,

-vs-                                         CORRECTED
DECISION & ORDER
10-CV-6613-CJS

WATKINS GLEN INTERNATIONAL, INC, *et al.*,

                                            Defendants.

**Siragusa, J.** This matter is before the Court on Plaintiffs' "Notice of Prejudice," sent to the Court by fax machine on December 15, 2010, at 1:04 PM. In it, Plaintiffs make the following requests:

> (8) We PREFER that you IMMEDIATELY DEMONSTRATE that you ARE and will be at an times hereafter IMPARTIAL by at least the following:
>
> (a) DIS-regard the original, un-served Complaint - which is irrelevant.
>
> (b) DIS-regard the original, un-served TRO - which is irrelevant.
>
> (c) READ ONLY the amended, served Complaint vs. fifteen Defendants.
>
> (d) READ ONLY the November 24, 2010 TRO and un-rebutted, prima facie documentary evidences of public record attached thereto.
>
> (e) WEIGH the FACTS OF RECORD: that all fifteen of the Defendants were served with the TRO on November 24, 2010; that not one of fifteen Defendants responded to or rebutted ANY of the documentary evidences attached to said TRO - nor can they do so; that your "ORDER" does not address and is not directed to nor is it captioned in accord with the TRO of November 24, 2010.
>
> (f) RE-VIEW your "ORDER" of December 7, 2010 *impartially* against ALL the aforementioned FACTS OF RECORD.
>
> (g) GRANT Plaintiffs the TRO based on the PAPERS BEFORE YOU:
>
> > (i) Plaintiffs' TRO of Nov. 24~ 2010 and unrebutted prima facie documentary evidences of public record attached thereto.

(ii) Defendants "non appearance" - ie failure of fifteen defendants to answer, rebut or object in any way to Plaintiffs' TRO.

(h) If you are UNABLE to act IMPARTIALLY and UNABLE to IMPARTIALLY and sua sponte amend any "errors" you may have made, then Please recuse yourself IMMEDIATELY and allow us IMMEDIATE access to impartial due process / redress.

(i) PLEASE Forward the enclosed Criminal Complaint and DVD to any and all officials you know should be apprised of same as is required of your office upon receipt of documentary and video evidences of crimes against the United States.

("Notice of Prejudice" at 5–6.) For the reasons stated below, Plaintiffs' requests are denied and the case is dismissed.

## BACKGROUND

On October 28, 2010, Plaintiffs filed their complaint. On November 2, 2010, the Court entered its first Order denying preliminary injunctive relief. On November 19, 2010, Plaintiffs filed their amended complaint, and on November 24, 2010, moved for a temporary restraining order. On December 8, 2010, the Court denied the temporary restraining order application. On December 9, 2010, defendants James P. Coleman, County of Schuyler, Thomas Gifford, Michael Notarfonzo, Nancy A. Peters, Schuyler County Sheriff's Department, Breck Spaulding, Margaret Starbuck, William Yessman, filed an answer. Additionally named as defendants in this lawsuit are: Phillip Barnes, Timothy Coleman, Mark MacNamara, Michael Printup, and Andrew Matusicky. None of those latter-named defendants has yet appeared in this litigation.

In their amended complaint, Plaintiffs raise seven causes of action. In the First, they allege Defendants deprived them of their liberty and property without due process contrary to the Fifth Amendment by utilizing a tax foreclosure proceeding and obtaining a decision

and order dated May 15, 2001, to seize Plaintiffs' property. In the Second, they allege Defendants violated their Fourth Amendment rights by depriving Plaintiffs of "security in their property by subjecting Plaintiffs to unlawful search and seizure…." (Amend. Compl. at 4.[1]) In the Third, Plaintiffs allege that Defendants colluded to deprive and defraud Plaintiffs of their property and its value. (*Id*.) In the Fourth, they allege Defendants have "destroyed, killed and removed Plaintiffs' property, caused the deaths and suffering of numerous animals, caused that Plaintiffs['] dairy cattle have not been milked since October 26, 2010." (*Id*. at 5.) In the Fifth, Plaintiffs allege another deprivation of property without due process contrary to the Fifth Amendment which occurred on or about October 27, 2010. In the Sixth, they allege Defendants violated the Fourth Amendment by requiring Plaintiff Albert to identify all the objects on his person and in his clothing. (*Id*. at 7.) Finally, in the Seventh, Plaintiffs allege a conspiracy among Defendants to violate the Fourth and Fifth Amendments.

In its Decision and Order of November 2, 2010, the Court detailed the facts alleged in the original complaint. Attached to that original complaint were several documents in support of Plaintiffs' claims, which are not attached to the amended complaint. Despite Plaintiffs' request to do so, the Court cannot ignore what Plaintiffs previously plead and upon which the Court relied to deny the first application for injunctive relief. As the Supreme Court observed in *Christianson v. Colt Industries Operating Corp*., 486 U.S. 800, 108 S. Ct. 2166 (1988):

---

[1]Plaintiff's amended complaint does not number every paragraph; thus, the Court will cite to only to the page numbers of the amended complaint.

> "As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 1391, 75 L. Ed. 2d 318 (1983) (dictum). This rule of practice promotes the finality and efficiency of the judicial process by "protecting against the agitation of settled issues." 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.404[1], p. 118 (1984) (hereinafter Moore's).

*Id*., at 486 U.S. at 815–16, 108 S. Ct. at 2177.

Established in the original complaint was the eviction that forms the basis for the present litigation. On September 20, 2010, New York Supreme Court Justice Judith F. O'Shea, signed a warrant against Albert Valent and Frances E. Valent, also known as Albert and Frances, noting that final judgment had been rendered on August 13, 2010, awarding to Watkins Glen International the delivery and possession of the following premises described in the warrant:

> 2001 Baker Hill Road, Town of Dix, Schuyler County, New York, and further described as Tax Map # 84-1-41.2, Tax Map # 94.00-1-6.1, Tax Map # 84.00-1-41.2 and a portion of the property identified as Tax Map # 84.00-1-41.11 as set forth in the Decision and Order of Justice Judith F O'Shea, dated August 12, 2010….

(Warrant, *Watkins Glen Int'l v. Valent*, No. 2010-0053 (N.Y. Sup. Ct. Sept. 20, 2010), *attached to Complaint as Ex. A*.) Plaintiffs contend in their amended complaint that their residence was in the land identified as Tax Map # 84.00-1-41.11, which they allege, "was not ever listed in nor ever foreclosed upon for delinquent taxes, penalties or fines in the Decision and Order dated May 15, 2001 in Schuyler County Tax Foreclosure proceeding Index No. 99-221 which expressly lists only two parcels: 84.00-1-41.2 and 84.00-1-46.1." (Amend. Compl. at 3.) In her decision and order dated August 13, 2010, Justice O'Shea wrote the following:

> Thomas Merrill, a professional and licensed land surveyor for approximately 33 years, was called to testify by respondent. He explained that he was hired by respondents to research and inspect the property at issue. He stated that the property described Petitioner's Exhibit # 6, entitled "Schedule A" (also attached to Notice to Quit, Petitioner's Exhibit # 3) contains discrepancies in the description of the acreage of 2001 Baker Hill Road. Mr. Merrill explained that the property described in "Schedule AU cannot "close mathematically" due to the excepted out parcels. However, on cross-examination, Mr. Merrill stated that the apparent discrepancies in the deeds "resolved themselves" by reference to prior deeds. He acknowledged that he was unable to find any recorded title to property owned by respondents in Schuyler County, and explained that respondents previously owned the property at issue, but their title was extinguished by the Tax Foreclosure Judgment. He further stated that he did not perform a survey and was unable to answer whether the purported discrepancies in the description of the property would affect petitioner's title. Finally, he testified that all recorded documents indicate that petitioner owns the property that is the subject of this proceeding.

(Decision and Order, *Watkins Glen Int'l v. Valent*, No. 2010-0053 (N.Y. Sup. Ct. Aug. 13, 2010), *attached to Complaint as Ex. B.*)

## STANDARDS OF LAW

### *Preimlinary Injunctive Relief*

To obtain either a temporary restraining order or a preliminary injunction, the movant must make a showing of "(a) irreparable harm; and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*., 596 F.2d 70, 72 (2d Cir. 1979); *see also, Jackson v. Johnson*, 962 F. Supp. 391, 392 (S.D.N.Y.1997) ("In the Second Circuit, the standard for a temporary restraining order is the same as for a preliminary injunction.") (citations omitted). Preliminary injunctive relief "is an extraordinary remedy that will not be granted lightly." *Jackson v. Johnson*, 962 F. Supp. at 392 (citations omitted).

The violation of a constitutional right will establish irreparable harm. *Lynch v. City of New York*, 589 F.3d 94, 99 (2d Cir. 2009). "The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest." *Patterson v. City of Utica*, 370 F.3d 322, 329 (2d Cir. 2004) (citations omitted).

***Recusal***

Title 28 U.S.C. § 455 provides, in relevant part, as follows: "(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." As a general matter, recusal motions are committed to the discretion of the judge, being asked to disqualify himself, who is enjoined to "weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case. Litigants are entitled to an unbiased judge, not to a judge of their choosing." *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir.1988) (citation omitted), *cert. denied sub nom. Milken v. S.E.C.*, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989). Moreover, "[a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *Id*. at 1312 (citation omitted). Recusal motions should not be used as strategic devices to judge shop or delay the proceedings. *Lamborn v. Dittmer*, 726 F.Supp. 510, 515 (S.D.N.Y.1989).

It is well settled that all subsections of § 455 are construed to require a timely application, which our Circuit reads as a "threshold" issue—*i.e.*, one to be evaluated before matters of substance are reached. *Apple v. Jewish Hospital and Medical Center*, 829 F.2d 326, 333 (2d Cir.1987). If the Court determines that the recusal motion is timely, it must

then address the merits of the application. In that regard, the relevant inquiry is: "Would a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned? Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *United States v. Bayless*, 201 F.3d 116, 127 (2d Cir.2000), *cert. denied*, 529 U.S. 1061, 120 S. Ct. 1571, 146 L. Ed.2d 474 (2000); *accord, Diamondstone v. Macaluso*, 148 F.3d 113, 120-21 (2d Cir.1998). The standard is "designed to promote public confidence in the impartiality of the judicial process." *In re Drexel Burnham Lambert Inc.*, 861 F.2d at 1313 (quoting H.R. Rep. No. 93-1453, at 5 (1974), reprinted in 1974 U.S.C.C.A.N. 6351, 6354-55). "Nevertheless, the existence of the appearance of impropriety is to be determined not by considering what a straw poll of the only partly informed man-in-the-street would show, but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge." *Bayless*, 201 F.3d at 126-27 (citation and internal quotations omitted).

Furthermore, although the "extrajudicial source" doctrine applies to recusal motions under 28 U.S.C. § 455(a), "[t]he fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for 'bias or prejudice' recusal .... Nor is it a sufficient condition for [such] recusal ...." *Liteky v. United States*, 510 U.S. 540, 554, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (emphasis in original). In other words, the "presence of an extrajudicial source [does not] necessarily establish bias, nor [does] the absence of an extrajudicial source necessarily preclude [ ] bias." *Id*. In any event, "[j]udicial rulings alone almost never constitute valid basis for a bias or partiality motion." *Id*. Instead,

-7-

the judge's rulings should constitute grounds for appeal, not for recusal. *Id*. Further, opinions formed by the judge that are based on the evidence in the case or events occurring during the proceedings do not constitute a basis for recusal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id*. Further, expressions of impatience, annoyance, dissatisfaction, and even anger, do not establish bias or partiality. *United States v. Landerman*, 109 F.3d 1053, 1066 (5th Cir.1997).

***Comity***

Under the *Rooker-Feldman* doctrine, a plaintiff may not initiate a federal court action that: (1) directly challenges a state court holding or decision; or (2) indirectly challenges a state court holding or decision by raising claims in federal court that are inextricably intertwined with the state court judgment, even if the claim is that the state court's action was unconstitutional. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *see Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 198-200 (2d Cir.1996); *Smith v. Wayne Weinberger P.C.*, 994 F. Supp. 418, 423 (E.D.N.Y.1998). *Dockery v. Cullen & Dykman*, 90 F. Supp. 2d 233, 236 (E.D.N.Y.2000). The Supreme Court made clear in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), that only it can entertain a direct appeal from a state court judgment.

**ANALYSIS**

In this case, Plaintiffs' original motion was made *ex parte*. The complaint as filed sought "[a]n immediate temporary restraining order before Defendants can be heard…." (Compl. at 16.) Thus, Plaintiff's complaint that the Court's original decision was made without input from Defendants is illogical. The second motion (Docket No. 5) also sought an *ex parte* temporary restraining order. Consequently, the Court's decision to deny that motion without obtaining input from Defendants was appropriate. In both cases, the documentary evidence provided shows that the State court made a determination after a hearing in which Plaintiffs participated, and lost. What is not shown is whether Plaintiffs pursued their right to appeal that decision through the State appellate courts. Plaintiffs' application docketed November 24, 2010 (Docket No. 5), sought relief virtually identical to the relief sought in the original complaint and on the same basis. Therefore, the Court appropriately treated the subsequent application as one for reconsideration of its prior decision denying preliminary injunctive relief. In neither application did Plaintiffs meet the requirements of Federal Rule of Civil Procedure 65 to entitle them to the extraordinary relief they sought.

As the Court observed in its initial decision:

> The record indicates that Plaintiffs have not owned the subject property since 2001, and that they have no legal right to be on the property. Moreover, Plaintiffs received ample notice of the eviction proceeding, and had an opportunity to be heard and to present evidence at a hearing. At the hearing, Plaintiffs raised the same arguments that they make in this action. Additionally, while Plaintiffs maintain that the eviction warrant was defective because it described the property as 2001 Baker Hill Road, and not 2031 Baker Hill Road, their papers indicate that the property has not been known as 2031 Baker Hill road for a number of years, and that, in any event, Justice O'Shea used the term "2001 Baker Hill Road" to include the property from which Plaintiffs were evicted. Therefore, the eviction warrant pertained to the

> white house and farm land upon which Plaintiffs were residing. For these reasons, Plaintiffs have not shown that they are entitled to preliminary injunctive relief.

(Decision and Order, *Albert and Frances v. Watkins Glen Int'l, Inc.*, No. 10-CV-6613 (W.D.N.Y. Nov. 2, 2010), at 6–7 (footnote omitted).

As for recusal, Plaintiffs contend that the Court is biased because it denied the relief they sought despite the fact that none of the fifteen defendants answered and rebutted Plaintiffs' allegations. This argument is without merit. First, at the time of the original order denying preliminary injunctive relief, no defendant had yet appeared in this action. Second, the Court construed Plaintiff's second application for injunctive relief as a motion for reconsideration of its first decision, which, as stated above, was made prior to the entry of any defendant in the case. Third, as the Court plainly stated, the *law* does not permit the issuance of injunctive relief even on unopposed allegations of fact *if* the Court determines that the moving party has failed to show (a) irreparable harm; and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. Based on the evidence submitted in the first application, the Court made that determination without the need for a further hearing. Plaintiffs' subsequent pleadings and applications have not altered the basis upon which the Court originally made its decision. Essentially, Plaintiffs' own evidence refuted their claim that they were evicted without due process of law, or that they suffered warrantless and unreasonable searches and seizures, contrary to the Fourth and Fifth Amendments.

Beyond this, the Court's previous decisions did not touch upon the *Rooker-Feldman* doctrine. However, in light of the questionability of the Court exercising jurisdiction over this lawsuit, the Court must now address *Rooker-Feldman*. In that regard, Plaintiffs amended complaint directly challenges the decision of the New York Supreme Court on grounds that it was made without due process of law, a claim clearly refuted by that court's decision, which evinces that Plaintiffs had an opportunity to present evidence before the decision was made. That being the case, this Court must abstain from exercising jurisdiction over the claim. "In short, an inferior federal court established by Congress pursuant to Art. III, § 1, of the Constitution may not act as an appellate tribunal for the purpose of overruling a state court judgment, even though the judgment may rest on an erroneous resolution of constitutional or federal law issues. The exclusive procedure for federal review is that specified by 28 U.S.C. § 1257." *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1142 (2d Cir. 1986), *rev'd on other grounds sub nom Pennzoil Co. V. Texaco, Inc.*, 481 U.S. 1, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987); *see also Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) (*Younger* abstention is based on "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."); *c.f. Delahunty v. State of Hawaii*, 677 F. Supp. 1052, 1055 (D. Hawaii 1987) ("Although the federal district court may not exercise appellate jurisdiction over the judgment of a state court, a district court does have jurisdiction over a 'general' constitutional challenge that does not require review of a final state court decision in a particular case.").

This case is similar to another one the Court previously decided where the plaintiff alleged he had not received due process in a tax foreclosure sale of his property. *Wik v. City of Rochester*, No. 07-CV-6541-CJS, 2008 U.S. Dist. LEXIS 92032 (W.D.N.Y. Nov. 13, 2008).[2] In that case, Mr. Wik alleged that he was the owner of property in the City of Rochester and that he never received notice of a hearing held in State court on the question of whether he was delinquent in the payment of his taxes. The plaintiff claimed he had attempted to pay his taxes with gold coins, but the city treasurer would not accept that payment. As have Plaintiffs here, Mr. Wik alleged violations of his Federal constitutional rights under the Fourth, Fifth and Fourteenth Amendments. The defendants moved to dismiss on the ground that the Court was without jurisdiction because of the State court action. The Court analyzed the case under the *Rooker-Feldman* doctrine and concluded that it must abstain from exercising jurisdiction over the Federal civil rights action since it was, in effect, an appeal from an unfavorable State court ruling. As in this case, the Court in *Wik* cited to 28 U.S.C. § 1257 and dismissed those causes of action that pertained to the tax foreclosure action. The Court also cited to the Tax Injunction Act, writing:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341 (1940). Thus, even if commenced originally in this Court, jurisdiction would not lie. *See Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 378-79 (6th Cir. 1993) ("challenge to the tax foreclosure on [the plaintiff's] real property was barred by the Tax Injunction Act.").

*Wik*, 2008 U.S. Dist. LEXIS 92032, 48–49.

---

[2]The Court will include a copy of the unpublished decision in *Wik* with the copy of this decision that is sent to Plaintiffs.

The present case is indistinguishable from the *Wik* case. Further, although Plaintiffs have not commenced any action in State court with regard to the facts involved in the present action, Defendants Watkins Glen International, Inc. and the Schuyler County Sheriff's Department *did* commence an action in State court in which Plaintiffs participated. Thus, this case is indistinguishable from the situation in the *Wik* case.

Initially, the Court liberally interpreted Plaintiff's complaint as raising claims under the Fourth and Fifth Amendments. However, the Court now determines, on the basis of the evidentiary proof submitted by Plaintiffs with that complaint, that Plaintiffs, through this lawsuit, are attempting to obtain a writ of certiorari for review of the State court decision by filing a civil rights action in this Court. As was the case in 1923 when *Rooker* was decided, only the Supreme Court has jurisdiction to hear an appeal from a state court action in which an appellant claims a constitutional violation. 28 U.S.C. § 1257 (1988). Accordingly, the Court determines that it must refrain from exercising jurisdiction over this lawsuit.

## CONCLUSION

For the reasons stated above, this amended complaint is dismissed. The Clerk is directed to close this case. The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United

States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

      IT IS SO ORDERED.

Dated:  January 7, 2011
         Rochester, New York

      ENTER:

           /s/ Charles J. Siragusa
           CHARLES J. SIRAGUSA
           United States District Judge